UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MONA ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS AND BLUE SHIELD OF ILLINOIS,<br>AT&T UMBRELLA BENEFIT PLAN NO. 3,<br><br>Defendants. | ) | No. 1:25-cv-00924-SEB-CSW |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Mona Robinson ("Ms. Robinson") filed this lawsuit, pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging that Defendant Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois ("BCBSIL") breached its fiduciary duty by preauthorizing an out-of-network surgical procedure and that BCBSIL and co-Defendant AT&T Umbrella Benefit Plan No. 3 (the "Plan") breached the terms of the plan by refusing to pay benefits for Ms. Robinson's surgery. Now before the Court are Defendants' respective Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkts. 37, 47. As discussed in greater detail below, BCBSIL's Motion to Dismiss is **granted in part** and **denied in part**, dkt. [37], and the Plan's Motion to Dismiss is **granted in part** and **denied in part**, dkt. [47].

**Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[A]t some point[,] the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("At [the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). In considering a motion to dismiss for failure to state a claim, district courts may consider any facts set forth in the operative complaint and/or exhibits attached thereto. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013); Fed. R. Civ. P. 10(c).

## Background

### I. Factual Averments

The Amended Complaint alleges that Ms. Robinson receives dependent health coverage under the Plan[1] by virtue of her husband's (former) employment with AT&T and thus qualifies

[1] In seeking dismissal of the Amended Complaint, BCBSIL and the Plan assert that Ms. Robinson is a participant in the AT&T Eligible Former Employee Medical Program, which is one of many benefits packages available to eligible AT&T employees. Dkt. 38 at 6; dkt. 48 at 2 & n.4. However, neither the Amended Complaint nor the (roughly 5,000 pages of) Plan documents attached thereto

as a "beneficiary" within the meaning of § 3(8) of ERISA, codified at 29 U.S.C. § 1002(8). Am. Compl. ¶¶ 1–2, dkt. 23.

BCBSIL is a commercial insurance company that provides third-party administrative services for the Plan as the Benefits Administrator; BCBSIL is also the alleged insurer of the Plan. *Id.* ¶¶ 2, 7. In exchange for the payment of fees, BCBSIL provides claims processing and other administrative services to the Plan while also providing AT&T beneficiaries access to BCBSIL's network of (preferred) providers, which comprise BCBSIL's "Preferred Provider Organization." *Id.* ¶ 8.

Ms. Robinson previously suffered from a painful orthopedic condition for which she sought and obtained medical treatment from Dr. Eric Horn ("Dr. Horn"), an in-network provider. Dr. Horn recommended that Ms. Robinson undergo corrective surgery and suggested that the operation take place at North Meridian Surgery Center ("North Meridian"), where Dr. Horn practices and is part owner. *Id.* ¶¶ 11–12.

Prior to treatment, Dr. Horn's office and North Meridian corresponded with BCBSIL to obtain prior authorization for the surgery.[2] The Amended Complaint avers that Ms. Robinson and "North Merdian . . . (on her behalf) requested information from North Meridian Surgery

reveal Ms. Robinson's participation in any specific benefits program. To the contrary, the Amended Complaint repeatedly cites the Plan documents in their entirety without delineating which program (and its corresponding terms) governs the case at bar. Am. Compl. ¶¶ 4, 10, dkt. 23. This ambiguity in the pleadings precludes us from finding that the terms of the AT&T Eligible Former Employee Medical Program—as opposed to any other available package—apply to Ms. Robinson. Defendants' contentions to the contrary exceed the scope of the factual allegations that can be readily ascertained from the instant pleadings and thus shall not be considered in our resolution of their motions to dismiss.

[2] In the Amended Complaint, dkt. 23, Plaintiff listed Exhibit 30 as the correspondence conveying the prior authorization from BCBSIL. We have been unable to find this document among the many exhibits attached to the complaint by Plaintiff, however.

Center to confirm that they were in her health insurance network under the Plan . . . ." *Id.* ¶ 14. North Meridian relayed to Ms. Robinson that it was in network for insurance purposes. *Id.*

On May 9 and/or 10, 2023, Ms. Robinson underwent surgery at North Meridian. Approximately six weeks later, on June 21, 2023, BCBSIL notified her that, "[d]ue to the high dollar charges on th[e] claim," "pre-payment review would be required." *Id.* ¶ 16. On July 21, 2023, BCBSIL sent a letter declining coverage and explaining that Ms. Robinson's policy allows benefits only for services received from Blue High-Performance Network ("HPN") providers. When a claim "is submitted with only a PPO, Alternate network or Participating provider classification," however, benefits are "not guarantee[d]." *Id.* ¶ 19. On November 4, 2023, BCBSIL confirmed by mail that its prior denial of benefits was correct and was thus being upheld. *Id.* ¶ 20.

## II. Litigation History

Ms. Robinson initiated this ERISA lawsuit on May 12, 2025. Dkt. 1. In the operative complaint, Ms. Robinson alleges that she is owed (but was denied) benefits under (and by) the Plan. She contends that BCBSIL is a plan fiduciary under ERISA that breached its fiduciary obligations by pre-approving coverage for her surgery at a surgery center that it later claimed was not in-network. Ms. Robinson also claims that by providing incomplete and inaccurate information in its initial refusal of coverage (on June 21, 2023), BCBSIL caused her harm in making her fully responsible for the cost of her surgery in the amount of $105,121.03. *Id.* ¶ 26.

On February 17, 2026, BCBSIL moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. Dkt. 37. BCBSIL argues that the complaint must be dismissed for two reasons: (1) Ms. Robinson improperly invokes 29 U.S.C. § 1132(a)(3) in challenging the denial of benefits, when such a claim can only proceed under 29 U.S.C. § 1132(a)(1)(B); and (2) under 29 U.S.C. § 1132(a)(1)(B), BCBSIL is not a proper defendant. Ms.

Robinson has responded in opposition to the motion on March 10, 2026, dkt. 44, and BCBSIL replied on March 17, 2026, dkt. 46.

Six days later, on March 23, 2026, the Plan moved to dismiss the Amended Complaint on grounds mirroring those asserted by BCBSIL. Dkt. 47. Specifically, the Plan contends that Ms. Robinson has failed to plead any terms of the Plan entitling her to the benefits she seeks, meaning that her benefits denial claim under § 1132(a)(1)(B) necessarily fails for lack of such factual averments. Additionally, the Plan argues that Ms. Robinson's purported fiduciary breach claim under § 1132(a)(3) fails as asserted against the Plan. Ms. Robinson filed her response brief on April 13, 2026, dkt. 49, and the Plan filed its reply brief on April 27, 2026, dkt. 52.

Defendants' respective motions to dismiss are now fully briefed and ripe for ruling.

## Discussion

Before turning to BCBSIL's and the Plan's arguments in support of dismissal, we pause to clarify the nature and scope of Ms. Robinson's claims. As BCBSIL has emphasized, the Amended Complaint does not clearly delineate which of Ms. Robinson's claims is asserted against which Defendant. Inartful pleading aside, however, the Amended Complaint does spell out the underlying factual circumstances that plausibly state claims for the wrongful denial of Plan benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B), as well as breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(3). *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("[A] complaint need not plead legal theories, and specifying an incorrect theory is not fatal."). With that clarification, we address below Defendants' various arguments with respect to each legal theory.

### I. Denial of Benefits under § 1132(a)(1)(B)

Plan participants may assert a civil action under ERISA "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to

clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In order to state a claim under this statute, "a complaint need not cite a specific provision of a plan," though it does "need[ ] to plead facts plausibly showing" an entitlement to an alleged benefit. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 544 (7th Cir. 2022).

Here, Ms. Robinson alleges that "BCBSIL and the Plan [are] responsible for paying an agreed upon rate for the services that Plaintiff underwent whether in network or not." Am. Compl. ¶ 31, dkt. 23. She avers that the "Plan states that outpatient surgical services provided by an in-network surgeon associated with that surgery are covered," *id.* ¶ 32, since the terms of the Plan include the following:

> The Program provides Benefits for the following Outpatient Services:
>
> - General medical Services, including the diagnosis and treatment of Illnesses. . . .
> - Surgery, including in-office nonemergency surgery. Benefits are provided under the "Physician and Surgical Services" section.
> - Administration of anesthesia. . . .
> - Diagnostic and therapeutic Services provided on an outpatient basis — such as pre-Admission testing and outpatient surgery. . . .
> - Pathology (laboratory) Services.
> - Radiology (X-rays), chemotherapy, nuclear medicine, diagnostic ultrasound Services and imaging or scanning techniques. Eligible Expenses for drugs for chemotherapy obtained through a prescription are payable under the Prescription Drug coverage. . . .
> - Services provided by a Physician's nursing staff.

- Medical supplies, such as casts and dressings, that are provided by a Physician as part of his or her Services.

Dkt. 23-2 at 159. Ms. Robinson alleges that the Plan is liable to her under § 1132(a)(1)(B) because it declined to cover the costs associated with North Meridian, an out-of-network facility, despite the surgeon, Dr. Horn's being an in-network physician; and, in any event, the Plan covers out-of-network services.

This claim against BCBSIL can be quickly resolved. "It is well established that an ERISA claim for benefits due ordinarily should be brought against the employee-benefits plan itself." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). "An ERISA § [1132(a)(1)(B)] claim is essentially a contract remedy under the terms of the plan," and "[a]s such, a cause of action for 'benefits due' must be brought against the party having the obligation to pay the benefits." *Id.* (citation modified). Ms. Robinson concedes in her responsive briefs that the Plan is the proper defendant for her § 1132(a)(1)(B) claim. Dkt. 44 at 8; dkt. 49 at 8 (stating that the Plan "is the obligor as a self-insured plan"). BCBSIL's motion to dismiss shall therefore be **granted** with regard to the § 1132(a)(1)(B) claim against it. Dkt. [37].

In order to plausibly state a claim against the Plan, Ms. Robinson must be a beneficiary entitled to benefits under the terms of the Plan. *See Brooks*, 729 F.3d at 764. The Plan language, excerpted above, provides weak support at best for Ms. Robinson's assertion that the Plan covers "outpatient surgical services provided by an in-network surgeon." Am. Compl. ¶ 32, dkt. 23. That litany of benefits covers the various outpatient services that might be provided in one form or another, despite the paucity of detail relating to the extent of coverage by in-network providers. That said, Ms. Robinson does clearly assert that the Plan entitled her to benefits, irrespective of whether the provider was in- or out-of-network. *Id.* ¶ 31. Accepting Ms. Robinson's allegation

as true, as we must at the pleading stage, we hold that she has plausibly stated a benefits denial claim against the Plan.

The Plan's contrary contentions are not availing at this juncture because they rely upon factual assertions beyond those alleged in the Amended Complaint. More specifically, the Plan argues that Ms. Robinson's benefits denial claim is not viable because she relies upon the terms of a component program that are inapplicable to her. Dkt. 48 at 8. As previously noted, however, the Amended Complaint does not specify which of the various benefit programs applies to Ms. Robinson, and, at this stage, we cannot discern from the 5,000 pages of Plan documents which component program relates to the case at bar. The Plan's averments concerning coverage limitations of the "AT&T Eligible Former Employee Medical Program" might ultimately prove fatal to Ms. Robinson's claim. *See* dkt. 48 at 8.[3] However, because the Plan's (and BCBSIL's) assertions regarding Ms. Robinson's participation in the former employee medical program are not tethered to the allegations in her complaint, they do not support dismissal at this juncture. The Plan's motion to dismiss Ms. Robinson's § 1132(a)(1)(B) claim thus must be **denied**. Dkt. [47].

**II. Breach of Fiduciary Duty under § 1132(a)(3)**

Claims administrators "with the power to grant or deny a participant's claim for health insurance benefits" qualify as fiduciaries under ERISA. *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). Fiduciaries are "obliged to carry out [their] duties solely in the interest of the insurance plan's participants and beneficiaries and with the exclusive purpose of

[3] We acknowledge that, in opposition to BCBSIL's motion to dismiss, Ms. Robinson argues that BCBSIL "does not dispute that [it] provides services as a third-party administrator for the AT&T Eligible Former Employee Medical Program." Dkt. 44 at 7. Seizing on this passing reference by Ms. Robinson, the Plan asserts that Ms. Robinson has effectively "acknowledged that she participates in the 'AT&T Eligible Former Employee Medical Program' component of the Plan . . . ." Dkt. 48 at 2 n.4. In resolving Defendants' motions to dismiss, we do not regard Ms. Robinson's unexplained passing remark in her response brief as a reliable (or dispositive) concession of fact, particularly where, as here, the complaint is otherwise ambiguous.

providing them with benefits, while employing 'the care, skill, prudence, and diligence' of a knowledgeable and prudent individual acting in the same capacity." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(A)(i) and (B)). Plan fiduciaries also owe participants the duty of loyalty, which "encompasses a negative obligation not to mislead the insured, as well as a positive obligation to communicate material information to the insured in circumstances where the fiduciary's silence might itself lead the insured to misapprehend h[er] rights and obligations." *Id.* (citation modified).

Here, Ms. Robinson alleges that BCBSIL, as claims administrator, breached its fiduciary duty by denying coverage for a preauthorized surgery and by failing to provide complete and accurate information regarding Ms. Robinson's insurance coverage. Am. Compl. ¶¶ 22, 26, dkt. 23. Ms. Robinson seeks recourse against BCBSIL pursuant to § 1132(a)(3), which "allows for the recovery of 'other appropriate equitable relief,' including potential recovery from non-fiduciaries, . . . but only to the extent that such relief is not available under [§§ 1132(a)(1)(B) and 1132(a)(2)]." *Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (internal citation omitted).

Again, we can make quick work of Ms. Robinson's claim for breach of fiduciary duty against the Plan. Fiduciary liability under ERISA is fact- and context-specific: a person acts "as a fiduciary only to the extent that he acts in such a capacity in relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) (citation modified). As asserted by the Plan, the Amended Complaint does not allege any facts establishing that the Plan acts or has acted as a fiduciary, which is to say Ms. Robinson has failed to identify what the Plan did or failed to do that allegedly violated its fiduciary obligations to Ms. Robinson.

Ms. Robinson's sole responsive argument is unavailing. She argues that the Plan is vicariously liable for BCBSIL's actions as a third-party administrator because the terms of the Plan

state that such administrator's actions "shall be considered an action by the Plan *Administrator*." Dkt. 49 at 7 (quoting dkt. 23-1 at 21) (emphasis added). The Plan *Administrator*, which the Plan documents identify as "AT&T Services, Inc.," dkt. 23-1 at 21, is not a party to this litigation, however. The Amended Complaint thus fails to state a viable claim against the Plan for breach of fiduciary duty, pursuant to § 1132(a)(3), and the Plan's motion to dismiss shall be **granted** accordingly.[4] Dkt. [47].

Turning to BCBSIL's motion to dismiss Ms. Robinson's breach of fiduciary duty claim, BCBSIL contends that recourse under § 1132(a)(3), ERISA's "catch-all" remedial provision, is not available to Ms. Robinson because her factual allegations constitute a claim for to the alleged denial of benefits for which § 1132(a)(1)(B) is the exclusive remedy. Contrary to BCBSIL's arguments, however, we find that the Amended Complaint plausibly alleges that BCBSIL breached its fiduciary obligations by preauthorizing a medical procedure without apprising Ms. Robinson of complete and accurate information regarding the scope of her coverage, including whether North Meridian qualified as an in-network facility. *See Smith*, 639 F.3d at 281–82. Thus, Ms. Robinson has plausibly averred that BCBSIL misled her into believing that the surgery would be covered.

BCBSIL expands upon its arguments in support of dismissal in its reply brief, asserting that the Plan's plain terms clearly informed Ms. Robinson that preauthorization does not guarantee coverage. Because the pleadings do not reference Ms. Robinson's participation in any single benefits program within the Plan, once again we cannot resolve this contention by BCBSIL at this juncture. BCBSIL's remaining argument, that Ms. Robinson's fiduciary claim fails to achieve

---

[4] We make no judgment as to whether Ms. Robinson can nonetheless obtain equitable relief against the Plan as a non-fiduciary. *See Peabody*, 636 F.3d at 373.

liftoff because, rather than contacting BCBSIL personally, "she relied on her providers' incorrect statements that they were in network," is also unavailing. Dkt. 46 at 5. The Amended Complaint alleges that "Plaintiff and North Meridian Surgery Center (on her behalf) requested information . . . to confirm that they were in her health insurance network under the Plan . . . ." Am. Compl. ¶ 14, dkt. 23. Ms. Robinson's factual averments, although admittedly sparse, give rise to a possible reasonable inference that both she and North Meridian contacted BCBSIL to inquire about coverage. At this early stage in the litigation, we do not credit BCBSIL's countervailing factual assertions. Accordingly, BCBSIL's motion to dismiss Ms. Robinson's fiduciary breach claim shall be **denied**. Dkt. [37].

We note without discussion "[t]he more difficult [lurking] question" of whether Ms. Robinson "may obtain meaningful relief" on the theories of liability she has asserted in this case. *Smith*, 639 F.3d at 282. Lacking a clear understanding of the relevant Plan terms and the circumstances of the alleged preauthorization issued by BCBSIL, we cannot at this early stage in the litigation resolve the outstanding issues raised by Defendants regarding the potential incompatibility between Ms. Robinson's dual theories of liability and the remedies available to her. For now, her complaint is sufficient, even if barely, to survive Defendants' pleading challenges.

## Conclusion

For the foregoing reasons, BCBSIL's and the Plan's Motions to Dismiss are hereby **GRANTED in part** and **DENIED in part**. Dkt. [37]; Dkt. [47]. Ms. Robinson's denial of benefits claim against BCBSIL as well as her breach of fiduciary duty claim against the Plan are hereby **dismissed**.

The case shall proceed accordingly.

IT IS SO ORDERED.

Date: 11/6/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Derick D Dailey
Crowell & Moring LLP
ddailey@crowell.com

Melissa A. Davidson
Hankey, Marks & Crider
mdavidson@hankeylaw.com

Stephanie L. Gutwein
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
stephanie.gutwein@faegredrinker.com

Thomas C. Hardy
Crowell & Moring LLP
thardy@crowell.com

Emily A. Kile-Maxwell
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
emily.kilemaxwell@faegredrinker.com